**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-02164-PAB-SKC

Jackson Vollmer,

Plaintiff,

v.

UNIVERSITY OF NORTHERN COLORADO

Defendant

---

**REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR TERMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION**

---

COMES NOW Plaintiff, by and through counsel, and hereby submits this Reply in Support of his Motion for Temporary Restraining Order or Preliminary Injunction. Plaintiff asks the Court to grant the Plaintiff's Motion for the reasons stated below.

## ARGUMENT

Throughout its Response, Defendant misconstrues the nature of this case and, accordingly, argues inapplicable standards. This is not a case in which a university merely failed to accommodate a disabled student. This is a case where the Defendant created a specialized program for disabled individuals who are so impaired, they would not have otherwise been admitted to the Defendant's university without the program's existence. A fundamental mischaracterization in Defendant's Response is the treatment of Plaintiff as a traditional student who happens to have a disability. Plaintiff belongs to a different class of student all together. Students in this program do not participate in a traditional curriculum, they do not receive traditional grades, and they do not graduate with a degree. Instead, students pay an additional

$9,000 outside of regular tuition to participate in a program specialized to meet their advanced needs. Under these circumstances, the traditional paradigm of ADA disability accommodations does not apply. By virtue of creating the GOAL program, the University has already fundamentally altered its programs and must provide reasonable accommodations for students such as Plaintiff within that fundamentally altered framework. Plaintiff is not asking for the University to create a new system; Plaintiff is asking for Defendant to apply the standards they had already created when they opened the GOAL program.

## I. Defendant's argument treats Plaintiff as if he were a traditional student with a disability rather than a highly disabled student in a special needs program.

The plaintiff is not a traditional student with a disability. He is a highly disabled individual in a special needs program provided by Defendant at significant cost to Plaintiff. As discussed in the Complaint, to attend Defendant's GOAL program, Plaintiff must pay an additional $9,000 outside of ordinary tuition. ECF No. 1, at 6. The purpose of this additional fee is to "pay[] for additional academic and independent living supports provided by GOAL." *Ibid.* (quoting University of Northern Colorado, https://www.unco.edu/unc-goal/costs-and-aid.aspx (last accessed August 21, 2023)). Furthermore, when Plaintiff successfully completes GOAL, he will not receive a degree, but a certificate of completion. *See,* University of Northern Colorado, https://www.unco.edu/unc-goal/ ("students are awarded a Credential of Completion") (last accessed September 28, 2023). Accordingly, by design, UNC has segregated a cohort of its student population based on significant disability. Treating Plaintiff as if he is not a part of this specialized cohort misconstrues the fundamental nature of the GOAL program.

### A. <u>Defendant misconstrues the nature of Plaintiff's disability needs to argue that Plaintiff was reasonably accommodated.</u>

Plaintiff is a student with significant disabilities. His enrollment in the GOAL program as opposed to a traditional enrollment at the University, or in any other postsecondary program is evidence of the extent of his disabilities. Plaintiff cannot be treated as if he has minor disabilities or disabilities for which the standard accommodations that the University provided were sufficient. The accommodations Defendant provided were far from sufficient and did not take into consideration the information that Defendant had regarding Plaintiff's specific needs.

Defendant argues that Plaintiff was provided reasonable accommodations according to his disability needs. ECF No. 22, at 4. Specifically, Defendant argues that Plaintiff was provided sufficient explanation of Defendant's No Contact Order and provided sufficient additional support through the GOAL program. *Ibid.* These two assertions are inherently contradictory.

First, Defendant asserts that Plaintiff received sufficient notice of the No Contact Order because the order "includes a general description of how the recipient should interpret the directive." *Ibid.* Moreover, he "was given instructions on complying with the No Contact Order through the test of the order itself . . ." *Id.* at 5. The phrase "general description" is significant. *Id.* at 4. Plaintiff is not a "general" student. He is highly disabled and requires significantly more support from Defendant to participate in its programs as evidenced by the existence of the GOAL program. Providing Plaintiff a "general description" and written instructions, such as those provided as a matter of course to all students, fails to treat Plaintiff as a member of a specialized cohort created by Defendant. *Ibid.* It necessarily treats Plaintiff as if he were not a member of the GOAL program. Given the nature of Plaintiff's disability and enrollment in GOAL, Defendant had full knowledge that he required additional supports. Defendant failed to provide those supports and instead expected Plaintiff to receive and interpret the No Contact Order as if he were not disabled.

Second, Defendant notes that "Plaintiff was provided support by other campus officials as a student of UNC and a member of the GOAL program."[1] *Ibid.* Defendant argues additional resources were available to Plaintiff, including the Executive Director of GOAL, peer mentors, and the Defendant's Disability Resource Center. *Id.* at 4-5. As addressed above, this argument carries the assumption that Plaintiff was a traditional student with a disability fully capable of understanding and utilizing these resources. His enrollment in GOAL is evidence of the fact that he was not a traditional student capable of utilizing these resources. Moreover, in citing to the additional supports provided through GOAL, Defendant acknowledges that Plaintiff is a member of a class with specialized needs beyond that of disabled students enrolled in traditional degree conferring programs at the University. *Ibid.* This citation contradicts Defendant's first argument that Plaintiff was provided sufficient information regarding the No Contact Order through a "general description." *Id.* at 4. Clearly, Defendant recognizes that Plaintiff is an individual with specialized needs. It cannot claim to have accommodated him by providing him the supports available to students without specialized needs.

Third, Defendant repeats this mischaracterization when it addresses the availability of an advocate for Plaintiff in disciplinary hearings. *Id.* at 5. Defendant cites the Student Code of Conduct which permits a student to "be accompanied and assisted by an Advisor." *Ibid.* Again, Defendant cites to a *general* university policy as an explanation for why it could not accommodate Plaintiff's *specialized* needs. Specialized needs which Defendant invited by creating the GOAL program. Defendant seeks to conflate the concept of "advocate" and

---

[1] As a tangential issue, providing Plaintiff with a peer mentor, who is a *fellow* student does not fulfill the Defendant's obligations to Plaintiff. A fellow student is not a trained social worker nor an individual with significant and specialized training sufficient to advocate for and educate Plaintiff. The suggestion that Plaintiff was fairly accommodated because a fellow student could have fully explained the No Contact Order to him is implausible on its face.

"advisor". Having an "advocate" present who could not speak on behalf of Plaintiff or be involved in any role greater than that of "advisor" ignores Plaintiff's greater needs as a highly disabled student in a specialized program. All students are entitled to the presence of an "advisor" who can be any person chosen by the student. *Ibid*. This was not an accommodation afforded to Plaintiff, it was Defendant once again treating Plaintiff as a general student.

Fundamentally, Defendant argues that Plaintiff has not demonstrated a likelihood of success on the merits of his Motion because Defendant provided Plaintiff the *same* accommodations it would provide any disabled student enrolled at the University. *See id.* at 6. However, Plaintiff was not a traditional student with a disability. He was not an individual who applied and received admission through the ordinary process and either then or subsequently notified the Defendant of a disability. Plaintiff applied to a highly specialized program *solely* for students who could not otherwise attend college. Under these circumstances Defendant cannot reasonably cite its general policies as a rationale for its treatment of Plaintiff. It also cannot cite those policies as reasons Plaintiff has failed to carry his burden on the motion. Plaintiff is in a fundamentally different class of students. Policies that fail to recognize this reality are not sufficient to demonstrate Plaintiff's claims will be unsuccessful on the merits.

B. <u>Defendant chose to fundamentally alter its programs by creating the GOAL program.</u>

In creating GOAL, Defendant created a specialized program for highly disabled individuals. Ultimately it created a program with significantly higher fees, a modified educational curriculum, and no conferral of a degree upon graduation. Contrary to Defendant's argument, Plaintiff is not demanding accommodations that fundamentally alter Defendant's programs. By creating GOAL, Defendant *chose* to fundamentally alter its own program. Plaintiff demands reasonable accommodations to fulfill Defendant's promise to provide significantly

disabled individuals a college experience. *See* University of Northern Colorado, https://www.unco.edu/unc-goal/ ("GOAL is an opportunity for students with intellectual and developmental disabilities to attend college.") (last visited September 19, 2023).

First, Defendant's cited authority is inapposite to the facts of this dispute. ECF No. 22, at 7.[2] [3] [4] *None* of Defendant's citations address circumstances where the defendant-institution created a specialized disability support program for highly disabled individuals, and then discharged those individuals for misconduct based on their disability. *Ibid.* Again, Defendant treats Plaintiff as if he were a traditional student with a disability rather than a member of a specialized cohort. This fact is crucial to any analysis of Plaintiff's disability claims and Defendant cannot meritoriously argue inapposite case law to support its position.

Second, Defendant both lacks authority to discharge its responsibilities under the ADA in favor of its obligations under Title IX and fails to provide support for that position. ECF No. 22, at 7. Defendant's opinion that providing Plaintiff an advocate in Title IX proceedings will

---

[2] *Profita v. Regents* concerns an individual dismissed from an M.D. program who later attributed his misconduct to his disability and thereafter requested readmission as an accommodation. *Profita v. Regents of the Univ. of Colo*., 709 F. App'x 917, 918 (10th Cir. 2017). Here, Plaintiff was admitted to a specialized disability program, provided a general No Contact Order, and expected to interpret and implement the Order as if he were not disabled. *See* ECF No. 1, at 8-18. Plaintiff was then expected to defend himself before the Defendant as if he were not intellectually disabled. *Ibid.* Plaintiff does not seek a retroactive accommodation for past misconduct. Plaintiff asserts Defendant failed to accommodate him throughout the disciplinary process and subsequent suspension.

[3] *Davila v. Qwest Corp* addresses an individual terminated from a position "for misconduct involving deceit that had no inherent or demonstrated connection with his disability." *Davila v. Qwest Corp.,* 113 F. App'x 849, 854 (10th Cir. 2004). Here, Plaintiff was suspended for alleged violations of a No Contact Order. ECF No. 1, at 8-18. The Defendant both provided the No Contact Order and expected him to defend himself against alleged violations of the Order as if he were not disabled. *Id.* at 8-18.

[4] In *Halpern v. Wake Forest,* the plaintiff repeatedly "failed to disclose his [disability]" or "request any disability-related accommodations." *Halpern v. Wake Forest Univ. Health Scis.,* 669 F.3d 454, 457 (4th Cir. 2012). When the plaintiff eventually requested an accommodation, he failed to comply with the defendant's accommodations process, but the defendant nevertheless provided the accommodation. *Id.* at 459. When his conduct was reviewed, he "maintained that his medical condition did not affect his ability to 'perform . . .'" *Ibid.* Thereafter he was dismissed and sought readmission as an accommodation. *Ibid.* The Fourth Circuit held that the plaintiff's history of misconduct disqualified him from admission "with or without accommodations" upheld the dismissal. *Id.* at 467. Here, Defendant had intimate knowledge of Plaintiff's disability and need for accommodations from the outset through his application to GOAL and submission of disability-documentation. ECF No. 1, at 4. Moreover, Plaintiff never maintained his disability did not affect his performance, nor did he display a track-record of misconduct over multiple years largely unrelated to his disability. *Id.* at 4-18. The facts of *Halpern* do not apply to this dispute.

"fundamentally alter the nature of UNC's conduct procedures . . ." omits the fact that Plaintiff is not a regular student. *Ibid.* Defendant's policy that "parties [] speak on their own behalf" is a *general* university policy, ostensibly created to comply with Title IX. *Ibid.* However, Plaintiff is not a part of the regular student body.

As addressed *ad naseum*, Plaintiff is a member of a specialized cohort that the Defendant itself created. In creating the GOAL program with modified curriculum and conferral status, the Defendant fundamentally altered the nature of its own programs and accordingly altered the nature of reasonable accommodations. *See Profita v. Regents*, "[a] reasonable accommodation is one designed 'to avoid discrimination based on a disability' by permitting a qualified individual with a disability to 'obtain the same benefits made available to nondisabled individuals. . .' The accommodation must provide *meaningful* access to the program or service. *Profita v. Regents of the Univ. of Colo*., 709 F. App'x 917, 920 (10th Cir. 2017) (internal citations omitted). Defendant cannot subject the students participating in the GOAL program, a high needs program, to the same general disciplinary hearing policies as non-disabled students. Failing to provide accommodations to the students enrolled in the GOAL program denies those individuals "*meaningful* access…" *Ibid*. It cannot defend itself by using its own *internal* Title IX policies as a shield when it affirmatively enhanced its obligations under the ADA.

Defendant concludes this argument by, again, inappropriately arguing that Plaintiff is subject to general university policy, despite his disabled status. ECF No. 22, at 8. Defendant argues that complying with Plaintiff's demand would "constitute a fundamental alteration" because it would modify student's obligations under the Defendant's code of conduct. *Ibid.* Defendant fails to acknowledge that by creating GOAL, it already had a clear and obvious obligation to modify its student code of conduct. *See* ECF No. 22, at 9 (("The entity knows of an

individual's need for an accommodation 'when that need is *obvious* or the individual makes a request.'") (quoting *J.V. v. Albuquerque Pub. Sch*., 813 F.3d 1289, 1299 (10th Cir. 2016) (emphasis added).

Defendant had full knowledge of the extent and impact of Plaintiff's disability when it admitted him to GOAL. ECF No. 1, at 4. GOAL was specifically created under federal law to "promote the successful transition of students with intellectual disabilities into higher education." *Ibid.* (quoting 20 U.S.C. § 1140(f) (internal quotation marks omitted). To effectuate GOAL, Defendant specifically modified its curriculum and standards for completion of the program compared to traditional graduation requirements. *Id.* at 2. Accordingly, Plaintiff's need for reasonable accommodation was *obvious*, and yet the Defendant treated him as if he were a traditional university student with a disability. Defendant cannot both benefit from creating this highly specialized program to receive both federal and private monies, while also failing to adapt its policies to the needs of this specialized group of students. *See id.* at 4 (GOAL is a CTP, which is a federally funded program); *id.* at 6 (Plaintiff paid "at least $9,000" outside of regular tuition and university fees for Plaintiff to attend Defendant's program).

Based on the foregoing, Defendant fails to argue the issue properly before the Court: whether, because Defendant created a highly specialized disability program, it was required to accommodate Plaintiff's disability beyond its general policies. All Defendant's arguments treat Plaintiff as if he were not a member of this specialized cohort, created by Defendant. Moreover, Defendant treats this dispute as if it did not affirmatively create GOAL and financially benefit from it. Accordingly, Defendant's arguments are inapposite to the facts and issue of this dispute.

**II. Plaintiff has demonstrated he will suffer irreparable harm.**

In his Motion, Plaintiff cited irreparable harm through losing his educational experience and future earning capacity. ECF No. 2, at 8. The loss of a college experience carries with it significant consequences including the "depriv[ation] of the emotional and social experience [of] independent living." *Ibid.* As a significantly intellectually disabled individual, Plaintiff's chief benefit from this program is this experience. Defendant's suspension cuts that experience off, prevents Plaintiff from obtaining it elsewhere, and separates Plaintiff from his social cohort. *See ibid.* (noting other inclusive education programs will not accept students with a history of behavioral issues or disruptions). These deprivations preclude Plaintiff from seeking a college experience this year and are severe deterrents to his ability to seek one in the future. These damages are both difficult to quantify monetarily, and the harm will have already accrued before the Court can fashion a remedy on the merits. *See ibid.* (citing *Hunter v. Hirsig*, 614 Fed. Appx. 960, 962 (10th Cir. 2015)). Accordingly, Plaintiff has demonstrated irreparable harm, and the Defendant's arguments to the contrary are unavailing as addressed below.

First, Defendant relies on *Rothberg v. L. Sch. Admission Council* for the proposition that "a 'mere delay of educational opportunities does not constitute irreparable harm.'" ECF No. 22, at 11 (quoting *Rothberg v. L. Sch. Admission Council*, 102 F. App'x 122, 126 (10th Cir. 2004)). However, here, Plaintiff does not assert "a 'mere delay . . .'" *Ibid.* Plaintiff asserts that Defendant's actions necessarily preclude him from attending college this year and significantly deters his ability to attend college thereafter. ECF No. 2, at 8. As noted above, Defendant's conduct significantly deters Plaintiff's ability to be accepted at an alternative institution, and separates him from his social cohort, as well as subjecting him to discipline for a matter he did not fully understand. These consequences are significant deterrents to Plaintiff seeking or receiving a college experience following his suspension.

Second, Defendant cites the one-month period between Plaintiff's receipt of his suspension letter and the filing of this motion as a persuasive reason for denying Plaintiff an injunction. ECF No. 22, at 10-11. While Defendant is correct that delay is a factor, Defendant entirely overstates Plaintiff's delay. Plaintiff received the suspension notice on July 17, 2023. ECF No. 1, at 14. Plaintiff filed his Motion on August 24, 2023. ECF No. 2, at 1. In the interim, Plaintiff, an intellectually disabled individual had to present the decision to his parents, who then needed to find and retain an attorney to represent Plaintiff. Counsel for Plaintiff then needed to complete the Complaint, ECF No. 1, and the Motion, ECF No. 2, to submit the matter to the Court. This process takes time and diligence.

Moreover, Defendant's misstates the application of *Am. Ass'n of People with Disabilities v. Herrera* to this dispute. ECF No. 22, at 11 ("Here, Plaintiff's delay of over one month in seeking injunctive relief undercuts his claim of irreparable harm. See Am. Ass'n of People with Disabilities v. Herrera, 580 F. Supp. 2d 1195, 1246 (D.N.M. 2008) (plaintiffs' two-week delay weakens allegation of irreparable harm)."). In *Herrera*, the relevant legislation was enacted in 2005. *Hererra*, 580 F. Supp. 2d at 1246. The plaintiffs filed a lawsuit against the legislation in 2008, and then motion for a preliminary injunction two weeks *after filing the complaint*. *Ibid.* Here, Plaintiff filed his Complaint and Motion within a month of the precipitating event, not *three years later*. *See generally* ECF No. 1, No. 2. Furthermore, Plaintiff simultaneously filed his Motion and Complaint the same day, meaning there was no delay between the two filings as in *Hererra*. Accordingly, *Hererra* is inapposite to this issue.

Third, Defendant's final argument is incredulous. *See* ECF No. 22, at 11 ("Plaintiff does not explain how a preliminary injunction at this stage could remedy his predicament."). Defendant's

actions have precluded Plaintiff from attending college this year. Readmitting Plaintiff necessarily remedies this situation.

## III. Defendant fails to demonstrate the balance of harms or public interest favors UNC.

First, Defendant misconstrues Plaintiff's argument. ECF No. 22, at 12 (Plaintiff argues this factor favors him because his loss of 'pursuing college experience' outweighs UNC's potential burden; UNC has already admitted Plaintiff to their program, he reasons, so it would not burden UNC to readmit him."). Plaintiff does not, and has not, argued that Defendant has no burden because he was already admitted. *See* ECF No. 2, at 9. Rather, Plaintiff argues that Defendant's burden is to provide Plaintiff reasonable accommodations as necessitated by his disability. *Ibid.* Because Defendant failed to provide Plaintiff reasonable accommodations, it did not "duly suspend" him. ECF No. 22, at 12. Instead, Defendant improperly suspended Plaintiff in violation of its obligations under the ADA. *See generally* ECF No. 1. Defendant's burden is to rectify that violation by readmitting Plaintiff. ECF No. 2, at 9. Plaintiff argues that the balance of harms supports Plaintiff because he was *actually* injured by the Defendant, whereas the Defendant seeks to avoid rectifying its conduct.

Defendant repeats its assertion that Plaintiff was "properly" suspended throughout this argument. ECF No. 22, at 12-13. In doing so, Defendant fundamentally misconstrues the nature of this dispute. *Ibid.* Plaintiff's fundamental contention is that the Defendant *improperly* suspended him in violation of the ADA. *See generally* ECF No. 1. The Defendant's interests in "upholding its code of conduct or imposing discipline on students", *ibid.* or "'maintaining a safe learning environment'", *ibid.* (quoting *Messeri v. DiStefano*, 480 F. Supp. 3d 1157, 1168 (D. Colo. 2020)), are general policy prescriptions applicable to traditional students, not to Plaintiff,

in these individual circumstances, nor as a representative of his specialized cohort. Citations to general policy do not discharge the Defendant's obligations under the ADA. The fundamental nature of disability protections preclude an institution from discrimination through general assertions of policy that operate to neglect "'shunt[] aside . . . [or] ignore'" the disabled. *Alexander v. Choate*, 469 U.S. 287, 296 (1985) (superseded by statute) (quoting 117 Cong. Rec. 45974 (1971)). Here, Defendant seeks to "benign[ly] neglect" Plaintiff in service general policy, ignoring his disabled status. *Ibid.*

Furthermore, all but one of Defendant's cited authority fails to address disabled individuals or their protections under the ADA. [5] [6] [7] [8] Defendant's only authority addressing disability does so under extremely attenuated circumstances, and not related to a "special needs school" which further distinguishes the case from the facts at issue in this matter.[9]

Here, the Defendant created GOAL, which is—entirely—a special needs program. ECF No. 1, at 2-18. By creating GOAL, the Defendant *chose* to fundamentally alter its programs. *Ibid.* The Defendant cannot now deny Plaintiff reasonable accommodations to "*meaningfully* access [] the program . . ." based on the argument that such accommodations fundamentally alter *non-GOAL* programs. *See Profita*, 709 F. App'x at 920.

---

[5] *Goss v. Lopez*, 419 U.S. 565, 567 (1975) which addressed *non-disabled* high school suspensions.

[6] *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.,* 341 F.3d 1197, 1199 (10th Cir. 2003) which addressed a *non-disabled* student suspended for possession of "a handgun, ammunition, and drug paraphernalia . . .".

[7] *Messeri v. Distefano*, 480 F. Supp. 3d 1157, 1160 (D. Colo. 2020) which addressed a *non-disabled* student expelled for "non-consensual sexual contact . . .".

[8] *Doe v. Ohio State Univ.,* 323 F. Supp. 3d 962, 965 (S.D. Ohio 2018) once again concerned discharging a *non-disabled* student based on allegations of sexual assault.

[9] *Bercovitch v. Baldwin Sch.*, 133 F.3d 141, 143 (1st Cir. 1998) addressing "whether a plaintiff may be compelled to arbitrate claims under the Americans with Disabilities Act (ADA) where the plaintiff had voluntarily signed an agreement requiring arbitration.". Specifically, *Bercovitch* determined that the lower court could not omit "conduct and disciplinary" requirements from its determination as to whether the plaintiff was otherwise qualified to attend the institution. *Id.* at 154-55. Importantly, *Bercovitch* specifically did not involve "a special needs school." *Id*. at 153.

Finally, Defendant entirely fails to address the public interest. ECF No. 22, at 12-13. As argued in Plaintiff's Motion, the public interest lies in favor of upholding Plaintiff's rights under the ADA, ECF No. 2, at 9, and in ensuring disability programs, like Defendant's GOAL, *actually* fulfill their federal purpose and support intellectually disabled individuals to attend college. *See* ECF No. 1, at 4.

## CONCLUSION

Because Defendant repeatedly treats Plaintiff as if he were not a member of a specialized, special-needs, cohort, its arguments and cited authority are inapposite to the nature of this dispute. For the reasons stated herein, Plaintiff respectfully requests that the Court grant Plaintiff's request for a preliminary injunction.

DATED: September 28, 2023

Respectfully submitted by:
*/s/ Igor Raykin*
Igor Raykin, Esq.
Conor O'Donnell, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 767-1846; (720) 588-9713
E-mail: igor@coloradolawteam.com; conor@coloradolawteam.com

**Attorneys for Plaintiff**